UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DONALD L. BROWN,
     Plaintiff,

v.                                  CIVIL ACTION NO. 24-11292-NMG

TRANSUNION HOLDINGS, INC;
TRANSUNION, LLC; JOHN DOES 1
THROUGH 5; JANE DOES 6
THROUGH 10,
     Defendants.

REPORT AND RECOMMENDATION ON
DEFENDANT, TRANSUNION, LLC'S, MOTION TO DISMISS (#7)[1]

KELLEY, U.S.M.J.

I. Background.

     Pro se plaintiff Donald L. Brown filed suit in the Norfolk County, Massachusetts Superior Court against defendants Transunion Holdings, Inc, Transunion, LLC, John Does 1 through 5, and Jane Does 6 through 10. *See* #12-1 at 5-44. Transunion, LLC (here, "Trans Union") removed the case to this Court on the basis on federal question jurisdiction. (#1 at 1 (¶¶ 2-3).) Plaintiff asserts violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Count I), *see* #12-1 at 18 (¶¶ 61-64); the Massachusetts Consumer Credit Reporting Act ("MCCRA"), Mass. Gen. Laws ch. 93, § 54A (Count II), *see* #12-1 at 19 (¶¶ 65-68); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 (Count III), *see* #12-1 at 20 (¶¶ 69-73); Mass. Gen. Laws ch. 93, §

---

[1] The motion has been referred to this court for report and recommendation. (#17.)

49 (Count IV), *see* #12-1 at 20-21 (¶¶ 74-81); the Lanham Act, 15 U.S.C. § 1125(a) (Count VI), *see* #12-1 at 23 (¶¶ 91-94); and Mass. Gen. Laws ch. 93A (Counts VIII and XIX), *see* #12-1 at 24-25 (¶¶ 102-108); *id.* at 36-37 (¶¶ 182-190).[2] Plaintiff also asserts common law claims for negligent misrepresentation (Count V), *see id.* at 21-22 (¶¶ 82-90); fraud and concealment (Count VII), *see id.* at 23-24 (¶¶ 95-101); invasion of privacy (Count IX), *see id.* at 25-26 (¶¶ 109-113); intentional infliction of emotional distress (Count X), *see id.* at 26-27 (¶¶ 114-123); negligent infliction of emotional distress (Count XI), *see id.* at 27-29 (¶¶ 124-134); defamation (Count XII), *see id.* at 29-30 (¶¶ 135-144); libel (Count XIII), *see id.* at 30-31 (¶¶ 145-149); slander (Count XIV), *see id.* at 31-32 (¶¶ 150-154); negligent hiring (Count XV), *see id.* at 32-33 (¶¶ 155-162); negligent training (Count XVI), *see id.* at 33-34 (¶¶ 163-170); negligent supervision (Count XVII), *see id.* at 34-35 (¶¶ 171-175); and tortious interference with an advantageous relationship (Count XVIII), *see id.* at 35 (¶¶ 176-181).

To its notice of removal, Trans Union attached the summons that was to be served on Transunion Holdings, Inc, *see* #1-1 at 2, stating that as of the filing of the notice of removal, there was no suggestion that any other defendant had been served, *see* #1 at 2 (¶ 5). No proof of service as to Transunion Holdings, Inc, has been filed here.[3] The complaint states that the true names of

---

[2] Plaintiff purports to assert Count VIII, for false or misleading representations, under "MASSACHUSETTS G.L. SEC 13A." (#12-1 at 24.) The court ultimately construes the claim as arising under Chapter 93A.

[3] Under the signature line on the motion to dismiss, Trans Union's counsel asserts that Trans Union has been "improperly identified as Transunion Holding, Inc and Transunion, LLC." (#7 at 3, 4.) In its corporate disclosure statement, Trans Union identifies itself as a wholly owned subsidiary of "TransUnion Intermediate Holdings, Inc.," a wholly owned subsidiary of "TransUnion." (#2 at 1.) The complaint identifies Transunion Holdings, Inc as the parent of Trans Union, and refers to them collectively. (#12-1 at 6 (¶¶ 5-6).)

John Does 1 through 5 and Jane Does 6 through 10 are presently unknown. Accordingly, the Doe defendants likely have not been served, either. (#12-1 at 6-7 (¶¶ 7-8).)

Trans Union moves to dismiss. (#7; *see* #8.) Plaintiff opposes. (#14.) For the reasons set out below, Trans Union's motion should be <u>allowed</u>. Because plaintiff also fails to state plausible claims against Transunion Holdings, Inc, and the Doe defendants, the case should be dismissed in its entirety.

II. <u>Standard of Review</u>.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the well-pled facts in the complaint as true and draws reasonable inferences from those facts in the plaintiff's favor. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (citing *S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc)). Well-pled facts are non-conclusory and non-speculative. *Id.* (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). The court is not bound to accept as true statements in the complaint that simply offer legal conclusions or merely rehash the elements of the causes of action. *Schatz*, 669 F.3d at 55; *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must set out enough facts, accepted as true, to state a claim to relief that is plausible on its face. "Plausible" means that the facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (first quoting *Twombly*, 550 U.S. at 570, then citing *Twombly*, 550 U.S. at 556). This plausibility standard is not a probability standard but requires more than a sheer possibility that the defendant acted unlawfully. *Id.* (quoting *Twombly*, 550 U.S. at 556).

Pro se complaints are generously construed. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).[4] Yet even pro se plaintiffs must comply with procedural and substantive law; "[t]he policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled. This is distinct from the case at hand, in which the formal elements of the claim [are] stated without the requisite supporting facts." *Id*.

III. <u>Allegations</u>.

The complaint is heavy on counts and exceedingly light on well-pled facts. In an "Introductory Statement," plaintiff alleges improper practices in the credit reporting industry

---

[4] This plaintiff has a number of closed and pending cases in this Court. As for cases against Trans Union, a nearly identical complaint was filed in the Norfolk Superior Court on the same date as this complaint by a different pro se plaintiff but with the same address as this plaintiff, in Westwood. *Vaiano v. Transunion Holdings, Inc; Transunion, LLC; John Does 1 through 5; Jane Does 6 through 10*, #24-cv-11294-MJJ, #13-1 at 4; *compare id.* at 5 (¶ 1) *with* #24-cv-11292-NMG, #12-1 at 5 (¶ 1); *see also, e.g.*, #24-cv-11294-MJJ, #13-1 at 18 (*Vaiano* complaint alleging a violation of the FCRA as to which "the Plaintiff Donald Brown demands judgment…"). Trans Union removed the *Vaiano* complaint and moved to dismiss. *See* #24-cv-11294-MJJ, ##1, 7-8. That motion is pending before Judge Joun.

On November 13, 2024, plaintiff filed a complaint in the Dedham, Massachusetts District Court related to student loans allegedly discharged in bankruptcy. *Brown v. Trans Union, LLC; John Does 1 through 5; Jane Does 6 through 10*, #24-cv-13020-NMG, #10-1 at 3, 9 (¶ 11). Trans Union removed the second *Brown* complaint and moved to dismiss. *See* #24-cv-13020-NMG, ##1, 7-8. That motion is pending before Judge Gorton. Of course, review of Trans Union's motion to dismiss this complaint is confined to this complaint. *See generally Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) ("…any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b)(6). However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

The court notes that plaintiff identifies himself as "someone who was an attorney," *see* #14 at 2, and a search on the Massachusetts Board of Bar Overseers's website confirms that a "Donald L. Brown" of Westwood has been suspended from the practice of law. https://www.massbbo.org/s/attorney-lookup?fName=Donald&lName=Brown&loc&bboNumber (last visited January 14, 2025).

generally, including upon information and belief, apparently on behalf of consumers generally, although he does not purport to bring a class action. In this section, plaintiff does not specifically identify Trans Union as a perpetrator of the allegedly improper practices nor does he specifically identify which of the allegedly improper practices harmed him personally. He does not plead facts to substantiate any claim of such personal harm. *See* #12-1 at 7-15 (¶¶ 9-30). The "Introductory Statement" thus adds nothing to the analysis.

According to the complaint, Transunion Holdings, Inc, and Trans Union are "engaged in the business of a credit reporting agency." (#12-1 at 6 (¶¶ 5-6).)[5] The Doe defendants are, or were, employees, agents, or servants of Trans Union,[6] and were acting within the scope of their official duties. *Id*. at 6-7 (¶¶ 7-8).

In 2021, plaintiff had covid-19 and, he admits, he "bec[a]me late in [his] payments for [his] credit accounts." *Id*. at 15 (¶ 31). Plaintiff asserts that he was "punished" by Trans Union, apparently when Trans Union "arbitrarily" "lower[ed] [his] credit score" because of his admittedly becoming late in his credit account payments. *Id*. (¶¶ 32, 35). According to the complaint, Trans Union is training staff "to become drones without independent thought." *Id*. at 16 (¶ 41).

Also according to the complaint, Trans Union "do[es]n't care whether [its] reporting is accurate" and "do[es]n't investigate when the plaintiff writes to the defendant to question their entries." *Id*. (¶ 45). Despite this allegation, which suggests that plaintiff wrote to the defendant to question their entries, he also appears to be alleging, inconsistently, that Trans Union "kept" its "address" from him. *Id*. at 17 (¶ 51). At any rate, plaintiff does not specify when he wrote to Trans

---

[5] Throughout this Report and Recommendation, the court normalizes capitalization.

[6] Like the plaintiff, the court will refer to Transunion Holdings, Inc, and Trans Union collectively, but as "Trans Union."

Union or provide any support for his allegation that Trans Union did not investigate after he wrote. Rather, he alleges that it is the "customary business practice[]" of the credit reporting industry to not investigate "a consumer's dispute" and to instead rely on "a creditor's statement of fact." *Id*. at 16 (¶ 46).[7] Similarly, while plaintiff alleges that Trans Union refuses "any" phone calls, *see id*. at 18 (¶ 57), he does not specify when he attempted to call Trans Union and Trans Union "refuse[d]" his calls.

Plaintiff also claims an absence of "instructions" from Trans Union for him to follow when trying to understand how his credit score has been derived. *Id*. at 16-17 (¶ 47); *see also id*. at 15 (¶ 34) (Trans Union "does not let the plaintiff know how [his] credit score is affected by certain major things that could happen within [his] lifetime which might adversely affect [his] credit score").

IV. Theories.

In support of Count I, plaintiff asserts that Trans Union's actions "in reporting the plaintiff references to the plaintiff[']s alleged credit reliability and with negative and unfounded alerts to potential creditors, represents a gross violation of the" FCRA. *Id*. at 18 (¶ 62). In support of Count II, he asserts that Trans Union's actions "in failing to remove negative incidents from [his] credit report caused massive harm to [him] and… represents a gross violation of the" MCCRA. *Id*. at 19 (¶ 66).

It is plaintiff's position that creditors use the credit reporting system to collect debts, and thus the credit reporting system can "loosely" be described as unfair debt collection. *Id*. at 16 (¶ 44). In Count III, the FDCPA claim, plaintiff alleges that Trans Union "constructively" "dunned"

---

[7] The court also notes that plaintiff's negligent misrepresentation claim, Count V, is based on Trans Union's having made "oral and written statements in letters, text messages and voicemail messages to plaintiff which defendant(s) negligently misrepresented the factual reality of plaintiff." *Id*. at 21-22 (¶ 83).

him regarding an unspecified overdue balance. *Id*. at 20 (¶ 70). He also alleges that he "had no balance, by [Trans Union's] own admission," *see id*. (¶ 71),[8] despite plaintiff's own admission, noted above, that he was late in his credit account payments, and despite that plaintiff does not allege when he became current in his credit account payments, if in fact that happened.

As set out in Count IV, the Mass. Gen. Laws ch. 93, § 49, claim, Trans Union "reported the plaintiff's negative accounts on its site, causing the plaintiff's credit score to be significantly lower and causing the plaintiff to either be turned down for credit or having to pay a higher rate for credit. . . . Thus the plaintiff has been injured by the defendant's wrongful behavior in using the credit reporting system, in effect, to collect a debt(s) which are no longer owed." *Id*. at 21 (¶¶ 77-78).

In Count VII, plaintiff asserts "fraud and concealment" in "concealing the details of the account information from him," *see id*. at 23 (¶ 96); "not revealing any of the alleged fraudulent behavior of the plaintiff that took place during the period from August 2014 to present," *see id*. at 24 (¶ 97); "not providing the documents requested by the plaintiff that [Trans Union] knew or should have known would reveal the truth of the allegations that the plaintiff mis-behaved in some manner," *see id*. (¶ 98); "not providing any notices to the plaintiff" about his account from October 2014 to January 2015 and, beginning in January 2015, providing him "the balance only," *see id*. (¶¶ 99-100).

It is plaintiff's position that Trans Union's lowering his credit score painted him as a "deadbeat" or in a "pejorative light." *Id*. at 15 (¶¶ 38-39). Painting plaintiff as a "deadbeat" purportedly invaded his privacy. *Id*. at 26 (¶ 112). Trans Union also allegedly invaded his privacy "by constantly publishing private and false facts about [his] credit accounts." *Id*. (¶ 111).

---

[8] *See also id*. at 22 (¶ 88) (in Count V, for negligent misrepresentation, alluding to "false debts and obligations on plaintiff's credit report").

The allegedly false or misleading statements underlying the negligent misrepresentation claim (Count V), the Lanham Act claim (Count VI), and the "Massachusetts G.L. Sec 13A" claim (Count VIII) are not described in any detail. *See id.* at 21-22 (¶ 83); *id.* at 23 (¶¶ 92-93); *id.* at 24-25 (¶¶ 102-105). The allegedly defamatory and libelous statements, for purposes of Counts XII and XIII, are not described in any detail, either, except that plaintiff asserts that the statements were untrue and attacked his character. *See id.* at 29-30 (¶¶ 137-138, 142, 146-147). The allegedly slanderous statements, for purposes of Count XIV, "accused plaintiff of criminal behavior." *See id.* at 31 (¶ 152).

On Count XVIII, for tortious interference with an advantageous relationship, plaintiff's position is that there existed a contractual relationship between plaintiff and his creditors, and Trans Union interfered with that relationship by making false statements to the creditors. *Id.* at 35 (¶¶ 177-178).

Plaintiff asserts that because of Trans Union's violations of Chapter 93A, he "suffer[ed] a credit inquiry on [his] credit report which effectively diminish[ed] his credit score and subsequently led to a higher cost of credit . . . ." *Id.* at 36-37 (¶ 189).

V. <u>Discussion</u>

A. <u>FCRA and MCCRA (Counts I and II)</u>.

15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.*

15 U.S.C. § 1681i(a)(1)(A) provides:

Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the

agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id*.

It is not clear whether plaintiff brings his FCRA claim under the former "reasonable procedures" provision or the latter "reasonable reinvestigation" provision, but in either case, he must plausibly allege that the reported information at issue was in fact inaccurate. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66-68 (1st Cir. 2008). "Inaccurate" means that reported information was either false or materially misleading, where "materially misleading" information "could [be expected to] adversely affect credit decisions." *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96-97 (1st Cir. 2022) (under § 1681e(b); citing *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008), and *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1988)); *see*, *e.g.*, *Ortez v. RentGrow, Inc.*, #24-cv-10376-FDS, 2024 WL 4349252, at *3 (D. Mass. Sept. 30, 2024) (applying *McIntyre* in finding that plaintiff plausibly alleged that tenant-screening report contained "materially misleading" entries where it reported his prison sentence for drug offenses but failed to report his subsequent pardon).

The court agrees with Trans Union, *see* #8 at 4-6, that plaintiff has not plausibly alleged that any reported information was in fact inaccurate. An allegation that Trans Union "arbitrarily" lowered plaintiff's credit score is not a plausible allegation that the credit score was falsely reported or materially misleading, particularly where plaintiff admits that he was late in his credit account payments. (#12-1 at 15 (¶¶ 31, 35).)[9] The court does not accept as true plaintiff's allegations of

---

[9] Information that "exist[s] or com[es] about seemingly at random or by chance or as a capricious and unreasonable act of will," *see* Arbitrary, Merriam-Webster Dictionary Online,

"unfounded" alerts, *see id*. at 18 (¶ 62), and "no balance," *see id*. at 20 (¶ 71), where plaintiff fails to allege how and when he became current in his credit account payments. These allegations are not well-pled.

The court also agrees with Trans Union, *see* #8 at 6, that the MCCRA claim should be dismissed for failure to plausibly allege that any reported information was in fact inaccurate. Similar to 15 U.S.C. § 1681e(b), Mass. Gen. Laws ch. 93, § 54(b), provides that "[w]henever a consumer reporting agency prepares or disseminates a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id*.[10] And similar to 15 U.S.C. § 1681li(a)(1)(A), Mass. Gen. Laws ch. 93, § 58(a) provides, in part:

> If the completeness or accuracy of any item of information in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time, but not to exceed thirty business days beginning on the date the consumer reporting agency receives notice from the consumer, reinvestigate and record the current status of such information unless it has reasonable grounds to believe that the dispute is frivolous or irrelevant; including by reason of a failure of the consumer to provide sufficient information, as requested by the consumer reporting agency, to resolve the dispute. …

*Id*.[11]

---

https://www.merriam-webster.com/dictionary/arbitrary (last visited January 14, 2025), might in fact be accurate.

[10] Notwithstanding that the complaint cites Mass. Gen. Laws ch. 93, § 54A, only, *see* #12-1 at 19, the court construes the MCCRA claim as arising under Mass. Gen. Laws ch. 93, § 54. Mass. Gen. Laws ch. 93, § 54A, applies to furnishers of information to consumer reporting agencies. Trans Union is alleged to be a "credit reporting agency," *see* #12-1 at 6 (¶¶ 5-6), not a furnisher of information.

[11] The complaint does not cite Mass. Gen. Laws. ch. 93, § 58(a). However, the court notes that the section also provides, in part: "A consumer reporting agency may require that disputes by consumers be in writing, but shall provide consumers with the option of speaking with a live representative at any time during the dispute resolution process, whenever possible and practicable

Plaintiff does not argue that for either a "reasonable procedures" or a "reasonable reinvestigation" claim under the MCCRA, he need not plausibly allege that the reported information at issue was in fact inaccurate. *See* #14 at 4-5. The court has not found any case that supports the conclusion that the Massachusetts Supreme Judicial Court would depart from the First Circuit, interpreting 15 U.S.C. §§ 1681e(b) and 1681li(a)(1)(A), and hold that, under the MCCRA, a plaintiff need not prove the information was inaccurate. *Cf. Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 85, n.2 (D. Mass. 2001) (noting Equifax's concession that the FCRA and MCCRA "are essentially identical" and analyzing the motion for summary judgment under federal law).

   B. <u>FDCPA and Mass. Gen. Laws ch. 93, § 49 (Counts III and IV)</u>.

The court agrees with Trans Union, *see* #8 at 7, that plaintiff has not plausibly alleged that it is a "debt collector" as required for Count III, under the FDCPA. *See Chiang v. Verizon New England Inc*., 595 F.3d 26, 41 (1st Cir. 2010) (the FDCPA regulates debt collectors); *see also* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or

---

or to the extent consistent with federal law." *Id*. For the reasons explained above, plaintiff's allegation that Trans Union refuses "any" phone calls, *see* #12-1 at 18 (¶ 57), is not well-pled.

the mails in any business the principal purpose of which is the enforcement of security interests. . .
."). The complaint identifies Trans Union as a "credit reporting agency," *see* #12-1 at 6 (¶¶ 5-6), and alleges merely that the credit reporting system, because it is used by creditors to collect debts, could "loosely" be described as unfair debt collection, *see id.* at 16 (¶ 44). However, courts have recognized that Trans Union is not a "debt collector" under the FDCPA. *See Witt v. U.S. Dept. of Ed.*, #3:23-cv-00562 (KAD), 2024 WL 889250, at *6 (D. Conn. Jan. 23, 2024) (Garcia, M.J.) ("It is well-settled that a credit reporting agency such as Experian, Equifax, Transunion and Innovis [is] not a 'debt collector' under the FDCPA") (collecting cases), *report and recommendation adopted*, #3:23-cv-00562 (KAD), #31 (D. Conn. Feb. 15, 2024) (Dooley, D.J.); *see also Lewis v. Maryland*, #17-cv-1636-PWG, 2018 WL 1425977, at *4 (D. Md. Mar. 22, 2018) ("credit reporting agencies are not debt collectors. … Accordingly, the FDCPA claims against…Trans Union…are dismissed with prejudice") (cleaned up) (citations omitted). Plaintiff argues that the matter is for the court to decide, asserting a "belie[f]" that he can prove that Trans Union is a "debt collector," without explaining how, or confronting the numerous cases adverse to his position. (#14 at 5-6.) Accordingly, the court recommends dismissal of Count III, under the FDCPA.

The court also agrees with Trans Union, *see* #8 at 7, that if Count IV arises under Mass. Gen. Laws ch. 93, §§ 24 to 28, then the claim should be dismissed for the failure to plausibly allege that Trans Union is a "debt collector," as defined in Mass. Gen. Laws ch. 93, § 24, for purposes of Mass. Gen. Laws ch. 93, §§ 24 to 28. *See Midland Funding, LLC v. Juba*, 2017 Mass. App. Div. 31, 2017 WL 716331, at *3 (Feb. 15, 2017) ("The [Massachusetts Debt Collection Practices Act] is intended to protect consumers from predatory collections activities" and is "[m]odeled after and parallel[s] the language of the" FDCPA).

Yet, both Trans Union and plaintiff fail to acknowledge, *see* #8 at 7; *see also* #14 at 5-6, that Count IV expressly arises under Mass. Gen. Laws ch. 93, § 49, *see* #12-1 at 20. That statute prohibits a "creditor" from collecting or attempting to collect a debt "in an unfair, deceptive or unreasonable manner," and rather than providing a private right of action, states that a failure to comply "shall constitute an unfair or deceptive act or practice" under Chapter 93A. Mass. Gen. Laws ch. 93, § 49; *see O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33-34 (D. Mass. 2014). Nevertheless, either because the statute does not provide a private right of action[12] or because plaintiff has not plausibly alleged that Trans Union is a "creditor,"[13] Count IV, under Mass. Gen. Laws ch. 93, § 49, should be dismissed.

C. Lanham Act (Count VI).

Like Trans Union, *see* #8 at 8-9, the court construes plaintiff's Lanham Act claim as one for false advertising, arising under 15 U.S.C. § 1125(a)(1)(B). *See Am. Bd. of Internal Medicine v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024) (plaintiff's "commercial disparagement" theory, that consumers would be misled into believing that his medical services are substandard because of statements about him on the defendant's website, failed to state a Lanham Act claim for false association, arising under § 1125(a)(1)(A)).

---

[12] *See*, *e.g.*, *DeCotis v. Specialized Loan Servicing, LLC*, 642 F. Supp. 3d 181, 189 (D. Mass. 2022) (dismissing Mass. Gen. Laws ch. 93, § 49, claim on this ground).

[13] 940 C.M.R. §7.03 defines "creditor," in part, as "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor. . . ." *Id*.; *see Espinosa v. Metcalf*, 575 F. Supp. 3d 250, 261 (D. Mass. 2021) (declining to dismiss Mass. Gen. Laws ch. 93, § 49, claim on the ground that the tow company was not a "creditor" where plaintiff plausibly alleged that company met the regulatory definition, as an "agent" or a "servant" of the creditors). Plaintiff does not plausibly allege, or persuasively argue, that Trans Union was the "agent[]" or "servant[]" of a creditor "in collecting a debt owed or alleged to be owed" to the creditor. *Contrast Espinosa*, 575 F. Supp. 3d at 254, 260 (noting allegation in complaint that the tow company was "hired" by the creditors).

Under § 1125(a)(1)(B), the plaintiff bears the burden of proving that the statement at issue is false or misleading. *Am. Bd. of Internal Medicine*, 114 F.4th at 65 (quoting *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022)). While that question is typically for the factfinder, the plaintiff must still plausibly allege such a statement. *Id*. (quoting *Azurity*, 45 F.4th at 487, 495, 499).

Where the statement at issue is literally true or ambiguous, the plaintiff bears the additional burden of proving that it nonetheless is likely to mislead and confuse consumers into believing a false representation of fact. *Id*. (citations omitted). For damages under § 1125(a)(1)(B), absent an intent to deceive, the plaintiff must show how consumers have actually reacted to the challenged advertisement, not merely how they could have reacted. *Id*. at 65 & nn. 27-28 (citations omitted). Most often, a plaintiff makes this showing through a consumer survey indicating that a substantial portion of the audience was actually deceived; although a plaintiff need not identify the particular consumer survey to survive a motion to dismiss, he must make some allegations of either intentional deception or actual consumer deception to state a legally sufficient claim for relief. *Id*. at 66 (citations omitted).

As discussed above, to the extent that he relies on his allegedly "arbitrarily" lowered credit score, plaintiff has not plausibly alleged falsity, particularly because he admits that he was late in his credit account payments. Nor has plaintiff plausibly alleged intentional deception or actual consumer deception. Accordingly, the Lanham Act claim, Count VI, should be dismissed.

14

D. Chapter 93A Claims (Counts VIII and XIX).

For the same reasons, to the extent that plaintiff relies on his allegedly "arbitrarily" lowered credit score to support Count VIII, under Massachusetts Gen. Laws Sec 13A,[14] and Count XIX, under Chapter 93A, the claims should be dismissed.

Counts VIII and XIX are not otherwise supported by well-pled facts. *See* #12-1 at 24-25 (¶¶ 102-108); *id.* at 36-37 (¶¶ 182-190). Assuming for the sake of argument that such conduct would violate Chapter 93A, plaintiff does not specify when he wrote to Trans Union or provide any support for his allegation that Trans Union did not investigate after he wrote. *See id.* at 16-17 (¶¶ 45-46, 51). His allegations regarding Trans Union's purported refusal of "any" phone calls are not well-pled. *See id.* at 18 (¶ 57). And his allegation of a lack of "instructions" from Trans Union for him to follow when trying to understand how his credit score had been derived is not well-pled. *See id.* at 16-17 (¶ 47). Given his failure to specifically identify which of the allegedly improper practices harmed him personally or, more importantly, to plead facts to substantiate any claim of such personal harm, *see id.* at 7-15 (¶¶ 9-30), the "Introductory Statement" adds nothing to the analysis.

The court need not reach Trans Union's argument that plaintiff did not satisfy Mass. Gen. Laws ch. 93A, § 9(3)'s requirement that he send it a demand letter thirty days before filing suit. (#8 at 13.) The court notes, however, that plaintiff fails to address this argument, such as by proffering that he did send Trans Union a demand letter thirty days before filing suit, or by arguing that he is exempt from the requirement. *See* #14; *see also McKenna v. Wells Fargo Bank, N.A.*, 693

---

[14] If Count VIII is a state false-advertising claim under Mass. Gen. Laws ch. 266, § 91, it "falls with the federal [false-advertising] claim." *Riverdale Mills Corp. v. Cavatorta N. Am., Inc.*, 146 F. Supp. 3d 356, 360, n.4 (D. Mass. 2015) (citations omitted).

F.3d 207, 217-218 (1st Cir. 2012) ("The demand letter requirement is not merely a procedural nicety, but, rather, a prerequisite to suit,…designed to encourage negotiation and settlement and as a control on the amount of damages") (cleaned up) (citations omitted); *see*, *e.g.*, *Fustolo v. Select Portfolio Servicing, Inc.*, #23-cv-10166-DJC, 2023 WL 7496792, at *9 (D. Mass. Nov. 13, 2023) (dismissing Chapter 93A claim for the failure to allege satisfaction of § 9(3)'s demand letter requirement).

     E.  <u>Common Law Claims</u>.

        1.  <u>Negligence (Counts V, XV, XVI, XVII); Invasion of Privacy (Count IX); Defamation (Count XII); Libel (Count XIII); Slander (Count XIV)</u>.

Trans Union argues, *see* #8 at 7-8, that plaintiff's claims for negligence;[15] invasion of privacy (Count IX); defamation (Count XII); libel (Count XIII); and slander (Count XIV) are "preempted" by the FCRA and, specifically, 15 U.S.C. § 1681h(e), which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

*Id*.

---

[15] The court construes Trans Union's reference to "negligence" to include Count V, for negligent misrepresentation, which is based on putative "oral and written statements in letters, text messages and voicemail messages to plaintiff which defendant(s) negligently misrepresented the factual reality of plaintiff." (#12-1 at 21-22 (¶ 83).) The court also construes the reference to "negligence" to include Count XV, for negligent hiring; Count XVI, for negligent training; and Count XVII, for negligent supervision. Because Trans Union challenges Count XI, for negligent infliction of emotional distress, on other grounds, *see* #8 at 11-12, the court does not construe its reference to "negligence" to include that count.

Some courts have interpreted § 1681h(e) to bar only those claims based on disclosures that are made under §§ 1681g and 1681h, that is, specified disclosures to the consumer by the credit reporting agency. *See Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980) (quoting *Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 32 (5th Cir. 1973) ("[T]he Act does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act"); *cf. Roybal v. Equifax*, #2:05-cv-1207-MCE-KLM, 2006 WL 902276, at *3-4 (E.D. Cal. Apr. 4, 2006) ("A fastidious reading of this section reveals that it applies only to causes of action based on information disclosed to consumers [15 U.S.C. § 1681g], the conditions and forms of disclosures to consumers [15 U.S.C. § 1681h] and requirements on users of consumer reports [15 U.S.C. § 1681m]. . . . Plaintiffs here complain that the CRA Defendants failed to accurately maintain Plaintiffs' credit information as required by Sections 1681e and 1681i. Consequently, the Court finds that Section [1681h(e)] does not preempt Plaintiffs' State Claims"); *Gohman v. Equifax Information Services, LLC*, 395 F. Supp. 2d 822, 829 (D. Minn. 2005) (in entering summary judgment for Equifax on common law claims for credit defamation and tortious interference with credit expectancy under § 1681h(e), rejecting plaintiff's argument that she was not complaining about covered disclosures; plaintiff testified that Equifax disclosed her credit information to her when she called and requested it: "Based on her testimony, the disclosure was provided as required by section 1681g(a) and included the erroneous information that is the basis of her section 1681e(b) claim"); *but see McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 942-943 (W.D. Wis. 2004) (§ 1681h(e) "bars claims based on '*information* disclosed pursuant to section 1681g, 1681h, or 1681m' and not claims based on the disclosure itself") (emphasis in original). While the court agrees with Trans Union that plaintiff has not plausibly alleged malice or willful intent to injure so as to overcome § 1681h(e)'s bar, *see*

17

#8 at 8, the court does not know if plaintiff is complaining about covered disclosures, and does not need to wade into statutory interpretation. That is because the court agrees with Trans Union's general argument, under the "preemption" heading, that plaintiff "has failed to allege any factual information in support of any of these claims, let alone enough information to support a claim for relief that is plausible on its face as required." *Id.*

If plaintiff is claiming that statements regarding his allegedly "arbitrarily" lowered credit score were defamatory, as discussed above, he has not plausibly alleged falsity. *See generally Ravnikar v. Bogojavlensky*, 782 N.E.2d 508, 510-511 & n.3 (Mass. 2003) (elements of defamation are: (1) the defendant made a statement, concerning the plaintiff, to a third party; the statement may be published in writing or its equivalent (in which case it is described as libel) or oral (in which case it is described as slander); (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement either caused the plaintiff economic loss or is actionable without proof of economic loss; "In most cases the statement must be false. . . . Massachusetts, by statute, allows a plaintiff to recover for a truthful defamatory statement if it was published in writing (or its equivalent) and with actual malice. *See* G.L. c. 231, § 92. The scope of the statute, however, is limited by the provisions of the First Amendment….") (citations omitted);[16] *see, e.g., Martin v. Mooney*, 448 F. Supp. 3d 72, 85-86 (D. N.H. 2020) (under New Hampshire law; plaintiff failed to plausibly allege falsity where the complaint lacked well-pled facts from which the court could draw the reasonable inference that the memorandum at issue was false and the complaint appeared to tacitly recognize that the memorandum contained a true statement). Likewise, an allegation that his credit score was

---

[16] Plaintiff does not appear to be claiming true libelous statements. *See* #12-1 at 30 (¶ 147) (libelous statements were "untrue").

"arbitrarily" lowered upon him becoming late in his credit account payments is not a plausible allegation that Trans Union "negligently misrepresented the factual reality of plaintiff." (#12-1 at 21-21 (¶ 83).)

The slander claim is also supported by the allegation that Trans Union "accused plaintiff of criminal behavior." (#12-1 at 31 (¶ 152).)[17] However, plaintiff does not provide further detail as to this putative statement, including who accused him, to whom, what criminal behavior, and when. *See*, *e.g.*, *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192-193 & n.9 (D. Mass. 2015) (dismissing claim for defamation, with leave to amend, under Fed. R. Civ. P. 8(a), notwithstanding that it was reasonable to infer from the complaint that, before the plaintiff was fired, some misinformation about his alcohol consumption or other behavior was communicated to his employer, and the misinformation may have contributed to the decision to fire him; "Merely alleging that unnamed Target agents or employees made defamatory statements about the propriety of Plaintiff's conduct does not explain the essential 'who, what, when, and where,' and it does not give Target fair notice of the factual basis for Plaintiff's defamation claim"); *see also*, *e.g.*, *Wade v. Tri-Wire Engineering Solutions, Inc.*, #20-cv-10523-LTS, 2021 WL 847989, at *7 (D. Mass. Mar. 5, 2021) (dismissing defamation claims notwithstanding the allegation that the defendants "published defamatory statements to others…falsely alleging…that Wade defrauded the Company") (citing *Grant*, 126 F. Supp. 3d at 193).

Plaintiff appears to be relying on the "false light" theory of invasion of privacy. (#12-1 at 26 (¶ 112).) Massachusetts does not recognize that theory. *Greenspan v. MasMarques*, #23-cv-10134-DJC, 2024 WL 1258062, at *16 (D. Mass. Mar. 25, 2024); *see Elm Medical Laboratory,*

---

[17] The allegation is actually that Trans Union "allegedly" accused plaintiff of criminal behavior. *Id.*

*Inc. v. RKO General, Inc.*, 532 N.E.2d 675, 681 (Mass. 1989). Moreover, such a claim "would be foreclosed by failure of the libel claim." *Yovino v. Fish*, 539 N.E.2d 548, 553 (Mass. App. Ct. 1989). Otherwise, plaintiff does not specify what allegedly "private and false facts about [his] credit accounts" Trans Union allegedly "constantly publish[ed]." (#12-1 at 26 (¶ 111).)

The only allegation in support of the negligent hiring, training, and supervision claims that is arguably factual in nature is that Trans Union is training staff "to become drones without independent thought." (#12-1 at 16 (¶ 41).) This allegation is conclusory and speculative and thus not well-pled.

 2. <u>Other</u>.

 a. <u>Fraud and concealment (Count VII)</u>.

The court construes Count VII as a common law claim for fraud by omission, and agrees with Trans Union, *see* #8 at 10-11, that plaintiff has failed to state a plausible claim. First, plaintiff does not specify what "details" of what "account information" Trans Union allegedly did not disclose to plaintiff, or when Trans Union allegedly failed to disclose them. *See* #12-1 at 23 (¶ 96); *see also North Am. Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (Fed. R. Civ. P. 9(b)'s heightened pleading standard applies to state law fraud claims in federal court); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (Rule 9(b) "requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred") (citation omitted); *cf. Masingill v. EMC Corp.*, 870 N.E.2d 81, 91 (Mass. 2007) (under Mass. R. Civ. P. 9(b), fraud must be pleaded with particularity).

Nor does plaintiff articulate any duty that Trans Union had to disclose such "details" or to disclose to plaintiff his own allegedly "fraudulent" behavior. *See* #12-1 at 24 (¶ 97); *see also Sahin*

*v. Sahin*, 758 N.E.2d 132, 138, n.9 (Mass. 2001) ("In a common-law action for fraud, a plaintiff must prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to her damage. . . . Fraud by omission requires both concealment of material information and a duty requiring disclosure. . .") (cleaned up) (citations omitted); *Royal Business Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991) (under Massachusetts law, "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose"). He also does not specify what "fraudulent" behavior related "documents" he requested from Trans Union, and when. Regardless, again, he does not articulate any duty that Trans Union had to disclose them. *See* #12-1 at 24 (¶ 98).[18]

### b. Infliction of emotional distress (Counts X and XI).

The court agrees with Trans Union, *see* #8 at 11-12, that plaintiff's intentional and negligent infliction of emotional distress claims ("IIED" and "NIED," respectively) are supported by threadbare recitals of elements (and, in the case of the NIED claim, the wrong elements), *see* #12-1 at 26-27 (¶¶ 114-134), not well-pled facts. As discussed above, plaintiff has not plausibly alleged falsity; rather, he admits that he was late in his credit account payments and asserts that his credit score was "arbitrarily" lowered as a result. *Cf.*, *e.g.*, *Gebhart v. Gibson*, #4:24-cv-00050-PK, 2024 WL 5105557, *3 (D. Utah Dec. 13, 2024) (dismissing Utah IIED claim; "Plaintiff acknowledges that she was the debtor in a bankruptcy action that was subsequently dismissed. A credit report's

---

[18] Any fraud-by-omission claim based on the failure to provide notices to plaintiff until 2015, *see* #12-1 at 24 (¶¶ 99-100), presents a statute of limitations problem as, assuming a duty to disclose (which plaintiff has not plausibly alleged), he presumably would have had actual knowledge of his claim more than three years before he filed suit. *See Stolzoff v. Waste Sys. Intern., Inc.*, 792 N.E.2d 1031, 1039 (Mass. App. Ct. 2003) (common law fraud claims are subject to a three-year statute of limitations which may be tolled under Mass. Gen. Laws ch. 260, § 12, codifying the fraudulent concealment doctrine, until the plaintiff has actual knowledge of his claim).

reference to a bankruptcy action that did in fact occur is not outrageous or intolerable"). Even had he plausibly alleged falsity (or a failure to investigate), such conduct is not "extreme and outrageous," for purposes of Count X. *Polay v. McMahan*, 10 N.E.3d 1122, 1128 (Mass. 2014) ("The standard for making a claim of intentional infliction of emotional distress is very high. . . . Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. . . . Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community") (cleaned up) (citations omitted); *cf.*, *e.g.*, *Estate of Rennick v. Universal Credit Srvcs., LLC*, #18-3881, 2019 WL 196539, at *1, 4-5 (E.D. Pa. Jan. 15, 2019) (dismissing Pennsylvania IIED claim based on defendant's tri-merge report repeating claim of two credit reporting agencies that plaintiff was deceased when he was still alive); *Anthony v. GE Capital Retail Bank*, #1:14-cv-2809 (ALC) (HBP), 2015 WL 10846141, at *4 (S.D. N.Y. Sept. 30, 2015) (dismissing New York IIED claim based on defendant's alleged inaccurate reporting of credit card debt and repeated calls and voicemails) (citing, *inter alia*, *Evans v. Credit Bureau*, 904 F. Supp. 123, 127 (W.D. N.Y. 1995) (allowing summary judgment motion; "Even if plaintiff could demonstrate that defendant failed to correct the alleged inaccuracies in his credit report, that conduct does not constitute 'extreme and outrageous conduct' which would support the claim for intentional infliction of emotional distress")).

Because he has not plausibly alleged falsity or a failure to investigate, assuming duties of care in these respects, for purposes of Count XI, plaintiff has not plausibly alleged breaches. *See*

*Lanier v. President and Fellows of Harvard College*, 191 N.E.3d 1063, 1072-1073 (Mass. 2022) (the first element of a NIED claim is negligence, which means that the defendant owed the plaintiff a duty of care and failed to exercise reasonable care, resulting in a breach of that duty).

### c. Tortious interference with an advantageous relationship (Count XVIII).

As noted, plaintiff's theory is that Trans Union made "false" statements to plaintiff's creditors, thus interfering with the contractual relationship between plaintiff and his creditors. (#12-1 at 35 (¶¶ 177-178).) Once again, he has not plausibly alleged falsity.

Furthermore, this theory makes little sense in light of plaintiff's allegation that it is the "customary business practice[]" of the credit reporting industry to not investigate "a consumer's dispute" and to instead rely on "a creditor's statement of fact." *Id.* at 16 (¶ 46). If Trans Union followed this putative "customary business practice" here, then it relied on "a creditor's statement of fact," and did not interfere with a contractual relationship between plaintiff and that creditor.

## VI. Recommendation.

Absent exceptional circumstances, a court is not obligated to offer a party leave to amend when leave has not been requested by motion. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 735-736 (1st Cir. 2016). Plaintiff has not requested leave by motion, and the court does not recommend offering him leave to amend.

On the other hand, Trans Union's repeated assertion that plaintiff "cannot" allege facts to support his claims, *see* #8 at 7, 8, 10, 11, 12, 13, is not adequately developed and the court recommends that its motion be allowed to the extent that it seeks dismissal without prejudice. The court does not recommend awarding attorneys' fees and costs, *see* #7 at 2; #8 at 14, as Trans Union fails to adequately develop such requests.

Because plaintiff also fails to state plausible claims against Transunion Holdings, Inc, and the Doe defendants, the case should be dismissed, without prejudice, in its entirety.

VII. <u>Review by the District Judge</u>.

Any party who objects to this Report and Recommendation must, pursuant to Fed. R. Civ. P. 72(b), file specific written objections with the Clerk of this Court within fourteen (14) days of the date of this Report and Recommendation. The objections must specifically identify the portion of the Report and Recommendation to which objections are made and state the basis for such objections. The failure to comply with Rule 72(b) will preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–9 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

January 14, 2025                     <u>/s/ M. Page Kelley</u>
M. PAGE KELLEY
United States Magistrate Judge